THEODORE LOVELAND and JAMES L. RECORDS, Appellants, v. E. E. CHAPMAN and J. W. ELLIOTT, Respondents.*

Kansas City Court of Appeals. December 29, 1924.

1. **PLEADING:** Permitting Verification and Amendment of Answer at Close of All the Evidence and Refusal to Give Peremptory Instruction on Ground Answer Was Not Verified Because Done at Said

**Time, Held Not Error.** Permitting verification of answer denying execution of notes and alleging fraud in procuring them, and conditional delivery, after introduction of plaintiff's evidence, and amendment of answer, after all the evidence was in, by interlineation that order for goods for which notes were given was countermanded, and refusal of plaintiff's peremptory instruction at close of the evidence upon ground that answer being unverified, execution of notes were admitted, *held* not error, in view of section 1274, Revised Statutes of 1919.

2. **PARTNERS: Question of Whether Defendants Were Partners and Act of One in Signing Notes Was Binding on Both Held for Jury.** Where defendants were sued upon notes executed by one in the name of both for merchandise ordered by him, question of whether the defendants were partners in the conduct of their business and the act of one was binding on both *held* for jury.

3. **INSTRUCTIONS: Refusal of An Instruction That Letter Was Not Countermand of Order for Merchandise Held Proper as in Nature of Peremptory Instruction Invading Province of Jury.** An instruction that letter written by one defendant was not a countermand of order for merchandise, for which notes sued on had been given, *held* properly refused as being a peremptory instruction invading the province of the jury.

4. **FRAUD: Sales: Question of Whether There Was Fraud in Procurement of Notes and Order for Merchandise Held for Jury.** Question of whether there was fraud in procurement of notes given for merchandise, which notes and order therefor were concurrently executed as a part of the same transaction, *held* for jury.

*Corpus Juris-Cyc. References; Appeal and Error, 4CJ, p. 858, n. 3; Bills and Notes, 8CJ, p. 1065, n. 7; Partnership, 30 Cyc., p. 594, n. 29; Pleading, 31 Cyc., p. 401, n. 6; p. 540, n. 19, 21; Sales, 35 Cyc., p. 86, n. 28; Trial, 38 Cyc., p. 1647, n. 13; p. 1651, n. 78, New.

Appeal from the Circuit Court of Cooper County.—*Hon. Henry J. Westhues,* Judge.

AFFIRMED.

*John Cosgrove* and *D. W. Cosgrove* for appellants.

*W. W. Kingsbury* and *Roy D. Williams* for respondents.

ARNOLD, J.—This is an action to recover on six promissory notes, one for $22 and five for $80 each, all dated November 29, 1921, the first due three months after date and the others in four, five six, seven and eight months, respectively, with interest at six per cent per annum after maturity. These notes were given in payment for three musical instruments called "golden throated claxtonolas" and twelve double disc records.

On the date on which said notes were given, defendant J. W. Elliott gave a written order (or contract) signed Elliott & Chapman, by J. W. Elliott, by the terms of which defendants were to act as agents in the sale of said musical instruments for the manufacturers thereof who are the plaintiffs herein. The order, or contract, a printed instrument of considerable length, was entered into at Pilot Grove, Mo., on the date above mentioned, at which time defendant Chapman was absent from his place of business. The order was received by plaintiffs in Iowa City, Iowa, on December 1, 1921, and on the following day plaintiffs received a letter from J. W. Elliott dated November 29, 1921, asking them to hold the order until Mr. Chapman's return, and stating that he (Elliott) had entered into a contract with plaintiffs' agents W. G. Proctor and J. L. Swagart, subject to the approval of Mr. Chapman on his return, "and should Mr. Proctor send in the order and not tell you this, will you kindly hold the order till you hear from us . . . on Mr. Chapman's return we will write you at once. . . . We never enter into contracts without we both are present . . . and that is the reason I asked your Mr. Proctor and Mr. Swagart to hold the order until Mr. Chapman should return."

On December 3, 1921, defendant Chapman wrote plaintiffs a letter, as follows:

"On my return from St. Louis Mr. Elliott told me what he had done and that he wrote you asking that matters be held up pending my return and sanction this this is the agreement he made with the two salesmen but of *cose* there is nothing of this kind on contract. Now

gentlemen the Elliott-Chapman Co. ceased to function in June, 1920, and I can't say as I will stand *responciable* for anything that has been done. I think it would be better that you have one or both of the *repsenatives* that sold this contract to Mr. Elliott, call and talk with me before going any *father*. I don't wish to go into *detal* about Mr. Elliott, but if necessary I can. However don't ship anything until you have some of your sales people call and talk with me.''

The pleadings and proof show that Theodore Loveland and James L. Records were partners doing business at Iowa City, Iowa, under the name of Brenard Manufacturing Company. The evidence shows that four days after the receipt of Mr. Elliott's letter of November 29th, the musical instruments were shipped. Defendants refused to receive them and they were finally returned to plaintiffs. The case was tried to a jury and the verdict was for defendants. Motion for new trial was unsuccessful and plaintiffs appeal.

The petition which is in six counts alleges the plaintiffs are partners doing business under the firm name of Brenard Manufacturing Company; that defendants are partners in business at Pilot Grove, Missouri, and for a long time prior to the dates mentioned in said petition had been doing business under the firm name of Elliott & Chapman and have held themselves out to the public as such partners. The various counts of the petition describe as exhibits the notes sued upon; each count asking judgment on the note therein described with six per cent interest from maturity, and that plaintiffs are the owners and holders of said notes.

Defendants filed separate answers. The answer of Elliott was not verified when filed but at the close of plaintiffs' evidence and over the objection of plaintiffs, the court permitted verification of said answer. The separate answer of defendant Elliott states that at the time of the execution of the notes sued upon, and for a long time prior thereto, a partnership had not existed between himself and defendant E. E. Chapman, and

that he did not own any interest in the business of E. E. Chapman at Pilot Grove, Missouri; that he had no authority to execute contracts or notes for the said Chapman; that at the execution of the notes and order for the merchandise taken therewith such lack of power and authority was explained to and understood by W. G. Proctor, the agent and representative of plaintiffs to whom such order and notes were delivered; that there was at that time a full understanding between defendant and said agent and representative that all of said papers were to be of no effect until ratified and approved by said defendant Chapman; that the same were never ratified or approved by said Chapman; that plaintiffs were notified long prior to the shipment of any merchandise upon said order; that plaintiffs have recognized said agreement between their said agent and this defendant; that such goods were returned to plaintiffs and are now in their possession, and that there is a failure of consideration for the notes sued upon.

The answer further avers that the notes were obtained from defendant through fraud and deceit on the part of plaintiffs' agent, W. G. Proctor, in this, that defendant Elliott, by reason of infirmities from which he had suffered for several years, and was suffering at the time of the execution of said notes, was unable to comprehend the meaning of lengthy and finely printed documents and was obliged to rely upon the representations of plaintiffs' said agent as to the contents of the documents signed as aforesaid; that said agent falsely and fraudulently and with intent to deceive defendant stated that the said order was subject to countermand at any time, when, as a matter of fact said document expressly stated therein that the same was not subject to countermand; and that said agent with fraudulent intent did not read to defendant that clause in said document, or order, which provided that the same was not subject to cancellation and that defendant was thereby induced to sign said order.

At the close of all the evidence, by permission of the court and over the objection of plaintiffs, the said answer was amended by interlineation as follows:

"That before the instruments were shipped the order was countermanded and then plaintiffs were notified to hold the order for the approval of Mr. Chapman and that, thereafter, said order was countermanded."

The separate answer of defendant Chapman was a general denial, and as further answer denied the execution by defendant of the notes sued on, or that they were executed by anyone having authority to execute the same for him.

The reply to the answer of defendant Elliott states that plaintiffs had no information that Chapman and Elliott were not partners and states defendants held themselves out to plaintiffs and the world as doing business in the name of Elliott-Chapman Furniture and Undertaking Company; denies that the court had jurisdiction of defendant Elliott's mental capacity and declares that said Elliott was, and is, in active charge of the business and was the actual manager thereof at the time the contract was made. The reply to defendant Chapman's separate answer avers and charges that the said order and notes sued on were signed in person by defendant Elliott who was in charge of the Elliott-Chapman Furniture and Undertaking Co., and that said Elliott was held out to the public and the plaintiffs as a member of said partnership firm.

The evidence of defendant shows that prior to the transaction here involved Elliott and Chapman composed a corporation doing business at Pilot Grove, Mo., engaged in the furniture and undertaking business; that prior to this transaction, the corporation was dissolved and defendants continued business in the same building, Chapman in the furniture business and Elliott as an undertaker; that they continued to use the stationery on hand at the dissolution of the corporation; that in the absence of either Elliott or Chapman, the other operated the store and that on the day of the transaction in con-

troversy, Chapman was away from Pilot Grove and Elliott was in charge.

The testimony further shows that Elliott was in ill health, and it is contended by defendants that his mentality was impaired at the time; that the agents of plaintiff, after the usual talk in support of the virtue of their wares, induced Elliott to sign the contract, order and notes. There was evidence to the effect that in the preliminary talk Elliott informed plaintiffs' agents that as Chapman was absent that he (Elliott) had no right to sign the contract; whereupon plaintiffs' agents informed Elliott that the contract could be countermanded if not satisfactory to Chapman on his return. Elliott testified to this fact and was corroborated by other testimony.

Further it is shown that the contract was lengthy and in fine print; that when it had been filled out by plaintiffs' agent, Elliott took it to the back of the room where the light was better and started to read it over but owing to his alleged infirmities he was very slow about it and plaintiffs' agent Proctor took the document from Elliott's hands and read it over; that he failed to read that part of it which stated that the order was not subject to countermand. This was introduced in support of the charge of fraud in the procurement of the order. The correspondence to which we have referred covers the transactions following the execution of the order and notes.

Further the evidence shows that on Chapman's return and following the correspondence to which we have referred, the goods were refused and thereafter were ordered returned by plaintiffs to prevent their sale by the railroad company, and plaintiffs allege they are being held for the benefit of defendants. This was the situation at the time the suit was tried.

The first point urged by plaintiffs as grounds for reversal is directed to the ruling of the court, over the objections of plaintiffs, in permitting defendant Elliott to verify his answer after the introduction of plaintiffs' evidence, and further objection is made that defendant

was permitted to amend his answer by interlineation after all the evidence was in. In support of this contention it is urged (1) that an unverified general denial tenders no issue; (2) that fraud in the execution of an instrument sued on cannot be relied upon if not verified; (3) that the notes show on their face that they were executed by defendant Elliott; that the verification of Chapman's answer amounted to nothing and that Elliott being a partner had a right to execute the notes.

These objections are without merit as will readily be concluded by reference to section 1274, Revised Statutes 1919, wherein it is said:

"The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

The statute in relation to amendments is liberal and the courts with propriety may be at least as lenient. [Carr v. Moss, 87 Mo. 447; Jacobs v. Railway Co., 204 S. W. 954; Wright v. Groom, 246 Mo. —, 151 S. W. 465.] It is the rule to allow amendments in the interest of justice, the exception to refuse them. [Corrigan v. Brady, 38 Mo. App. 649; McClanahan v. Boggess, 154 Mo. App. 600, 136 S. W. 237.] There was no error in the ruling of the court in permitting the verification of Elliott's answer.

The second assignment of error is that the court erred in refusing plaintiffs' peremptory instruction at the close of the evidence. As a basis of this assignment it is urged that the answer of Elliott being unverified, the execution of the note was admitted. In view of our holding above, this phase of the appeal requires no further discussion.

It is also charged that the court erred in refusing instructions 2, 3 and 4, offered by plaintiffs. Instruction No. 2, in effect, is a peremptory instruction to find for plaintiffs because, under the proof, defendants were partners in the conduct of their business and the act of one was binding on both. There was substantial evidence that defendants were not partners and the question as to whether or not they were partners was for the jury.

Refused instruction No. 3 is of similar import, and therefore not proper. Refused instruction No. 4 sought to tell the jury that the letter written by defendant Elliott was not a countermand of the order for merchandise, and was in its nature a peremptory instruction. These refused instructions, if given, would have invaded the province of the jury and their refusal was not error.

Finally, it is charged the court erred in admitting testimony, over the objection of plaintiff which tended to vary the terms of the notes in suit. In support of this contention it is stated there was no fraud practiced upon defendants by plaintiffs' agent in procuring said notes. We cannot accept this position as sound since the record discloses the notes and order for the merchandise were concurrently executed, were a part of the same transaction, and there was substantial evidence of fraud in their procurement. The question of fraud therefore was for the consideration of the jury; and that body having decided against plaintiffs' contention in this respect, this court is not authorized to disturb the verdict.

Finding no reversible error of record, the judgment is affirmed. All concur.